## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| **BENONI AMPONSAH, RONALD BROOKS, BRUCE CASE, HENRY COOPER, PEDRO DAVILA, ALBERT EXUM, DOMINIQUE FENNELL, CODY GARDINO, JAMES GLADDEN, JODI HODGES, ANTHONY JELKS, AMEER LAWTON, CHARLES MCWILLIAMS, MICKONEN MICKAEL, KERRY PAGE, DEREK PEGUES, HERU TCHAAS, CALVIN WILLIAMS, COURTNEY GAYLE, JOSE ISTURIZ, WINSTON TEW, and OLBIN VELEZ,** | **Civil Action No.**<br><br><br>**JURY TRIAL DEMANDED** |
| **Plaintiffs,** | |
| **v.** | |
| **DIRECTV, INC., DIRECTV, LLC, MASTEC NORTH AMERICA, and MULTIBAND CORP.,** | |
| **Defendants.** | |

## <u>COMPLAINT</u>

Plaintiffs Benoni Amponsah, Ronald Brooks, Bruce Case, Henry Cooper,

Pedro Davila, Albert Exum, Dominique Fennell, Cody Gardino, James Gladden,

Jodi Hodges, Anthony Jelks, Ameer Lawton, Charles McWilliams, Mickonen

Mickael, Kerry Page, Derek Pegues, Heru Tchaas, Calvin Williams, Courtney Gayle, Jose Isturiz, Winston Tew, and Olbin Velez, by and through their undersigned counsel, for their individual complaints against DIRECTV, Inc. and DIRECTV LLC (together, "DIRECTV"); and MasTec North America, Inc. and Multiband Corporation, ("Provider Defendants" or "HSP Defendants") (collectively with DIRECTV, "Defendants"); hereby state as follows:

## NATURE OF SUIT

1.     DIRECTV—the largest provider of satellite television services in the United States—is responsible for a far reaching "fissured employment"[1] scheme. In order to expand and service its customer base (topping more than 20 million domestic subscribers), DIRECTV has engaged tens of thousands of technicians— including each of the Plaintiffs in this case—to install and repair its satellite systems. Although DIRECTV requires these technicians to drive a DIRECTV-

---

[1] Fissured employment describes the practice of a large company attempting to shed its role as a direct employer and purporting to disassociate itself from the workers responsible for its products (albeit maintaining tight control over the method, manner, quantity, and quality of production). The practice of outsourcing an employer's responsibilities and obligations to subordinate entities and subcontractors is highly profitable for companies like DIRECTV, but results in stagnation of wages and benefits and causes rampant violations of wage-and-hour laws. *See e.g.*, David Weil, *The Fissured Workplace: Why Work Became So Bad for So Many and What Can Be Done to Improve It* (Harvard Univ. Press, Feb. 3, 2014); David Weil, *Enforcing Labour Standards in Fissured Workplaces: The US Experience*, 22 Econ. & Lab. Rel. Rev. 2, at 33-54 (July 2011).

branded vehicle, wear a DIRECTV uniform, and perform their work according to DIRECTV's exacting policies and procedures, DIRECTV disclaims any legal relationship with these workers, tagging them instead as "independent contractors" or employees of subordinate entities (including the named service provider Defendants). But fortunately for these workers, it is the economic reality of the relationship—not DIRECTV's self-serving labels—that controls whether Plaintiffs meet the definition (among the broadest ever legislated) of an "employee" under the Fair Labor Standards Act ("FLSA").

2.      Plaintiffs' claims squarely challenge this dangerous trend, and are not the first to do so. The U.S. Department of Labor ("DOL") has made a priority of investigating and exposing multi-party business arrangements that shirk compliance with the FLSA.  *See* http://wage-hour.net/post/2012/09/25/Fissured-Industry-Enforcement-Efforts-Continue.aspx (last visited Oct. 9, 2014).   The DOL's Misclassification Initiative, launched under Vice President Biden's Middle Class Task Force, is aggressively combating this pervasive issue in order to restore rights denied to individuals.[2]  In September 2011, then-Secretary of Labor Hilda L.

---

[2] "The misclassification of employees as something else, such as independent contractors, presents a serious problem, as these employees often are denied access to critical benefits and protections—such as family and medical leave, overtime compensation, minimum wage pay and Unemployment Insurance—to which they are entitled. In addition, misclassification can create economic pressure for law-

Solis announced the signing of a Memorandum of Understanding between the DOL and the Internal Revenue Service (IRS), under which the agencies combine resources and share information to reduce the incidence of misclassification of employees, to help reduce the tax gap, and to improve compliance with federal labor laws. The DOL's Wage and Hour Division is also partnering with individual states whose workers are being subjected to this practice.[3]

3.      The individual Plaintiffs joined herein intend to prove in this litigation that they are legally employed by DIRECTV and, where applicable, one or more of the named Provider Defendants, and are entitled to the overtime and minimum wage protections of the FLSA.

## JURISDICTION AND VENUE

4.      The FLSA authorizes court actions by private parties to recover damages for violation of the FLSA's wage and hour provisions. Jurisdiction over

---

abiding business owners, who often struggle to compete with those who are skirting the law. Employee misclassification also generates substantial losses for state Unemployment Insurance and workers' compensation funds." *See* http://www.dol.gov/opa/media/press/whd/WHD20120257.htm (last visited Oct. 9, 2014); *see generally*, DOL Misclassification Initiative, available at http://www.dol.gov/whd/workers/misclassification/ (last visited Oct. 9, 2014).

[3] *See, e.g.*, DOL Misclassification Initiative, *available at* http://www.dol.gov/whd/workers/misclassification/#stateDetails (last visited Oct. 9, 2014).

Plaintiffs' individual FLSA claims is based on 29 U.S.C. § 216(b) and 28 U.S.C. § 1331.

5.    Venue in this district is proper pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claims alleged herein occurred in this judicial district and Defendants are each subject to personal jurisdiction in this district.

## PARTIES

6.    Benoni Amponsah is an individual residing in Hiram, Georgia.

7.    Ronald Brooks is an individual residing in Pembroke, Georgia.

8.    Bruce Case is an individual residing in Woodstock, Georgia.

9.    Henry Cooper is an individual residing in Charlotte, North Carolina.

10.    Pedro Davila is an individual residing in Roswell, Georgia.

11.    Albert Exum is an individual residing in Mauk, Georgia.

12.    Dominique Fennell is an individual residing in Douglasville, Georgia.

13.    Cody Gardino is an individual residing in Ooltewah, Tennessee.

14.    James Gladden is an individual residing in Ellaville, Georgia.

15.    Jodi Hodges is an individual residing in Hope Mills, North Carolina.

16.    Anthony Jelks is an individual residing in Conyers, Georgia.

17.    Ameer Lawton is an individual residing in Brooklyn, New York.

18.     Charles McWilliams is an individual residing in Conley, Georgia.

19.     Mickonen Mickael is an individual residing in Lawrenceville, Georgia.

20.     Kerry Page is an individual residing in Martinez, Georgia.

21.     Derek Pegues is an individual residing in Stone Mountain, Georgia.

22.     Heru Tchaas is an individual residing in Largo, Florida.

23.     Calvin Williams is an individual residing in East Point, Georgia.

24.     Courtney Gayle is an individual residing in Augusta, Georgia.

25.     Jose Isturiz is an individual residing in Tucker, Georgia.

26.     Winston Tew is an individual residing in Eufaula, Alabama.

27.     Olbin Velez is an individual residing in Acworth, Georgia.

28.     DIRECTV, Inc. is a Delaware corporation with its principal place of business in El Segundo, California. DIRECTV, Inc. does business as DIRECTV Home Services. In December 2011, DIRECTV, Inc. merged with another DIRECTV entity, DIRECTV Operations, LLC. The resulting entity is known as DIRECTV, LLC, which is a Delaware corporation with its principal place of business in El Segundo, California.

29.     Defendant MasTec North America, Inc. ("MasTec") is a Florida corporation with its principal place of business in Coral Gables, Florida.

30.    Defendant Multiband Corp. ("Multiband") is a Minnesota corporation, with its principal place of business in New Hope, Minnesota.

31.    All Plaintiffs performed work for DIRECTV and/or one or more Provider Defendant in Georgia.

32.    All Defendants do business or have done business in Georgia.

## COMMON FACTUAL ALLEGATIONS

**DIRECTV's Fissured Employment Scheme: The Provider Network**

33.    Plaintiffs' principal job duty as technicians was to install and repair DIRECTV satellite television service.

34.    DIRECTV oversees a network of Providers (the "Provider Network") who supply DIRECTV this workforce of technicians, either by serving as their ostensible employer, or by "subcontracting" with technicians dubbed "independent contractors."

35.    DIRECTV conceived of, formed, and manages DIRECTV's Provider Network.   DIRECTV operates its Provider Network nationwide from its headquarters in El Segundo, California, reaching each state where Plaintiffs work.

36.    The Provider Network is comprised of principal intermediaries that DIRECTV dubs its Home Service Providers ("HSPs"), secondary intermediaries

deemed "Secondary Providers," as well as a patchwork of largely captive entities that are generally referred to as subcontractors.

37.    Upon information and belief, at all relevant times, DIRECTV was the primary, if not the only, client of the Providers and was the source of substantially all of each Provider's income.

38.    During the relevant time period, and as alleged in more detail *infra*, many HSPs were subsumed by DIRECTV through a series of mergers and acquisitions, leaving, for purposes relevant to the instant cases, only HSPs DirectSat, MasTec, and Multiband.

39.    DIRECTV controls the Provider Network through a variety of means including detailed agreements known as Home Services Provider Agreements, Services Provider Agreements, and Secondary Provider Agreement of Equipment Installation and Service (collectively referred to herein as the "Provider Agreements"). The Provider Agreements establish parallel—indeed, effectively identical—business relationships between DIRECTV and each HSP and subcontractor. The salient provisions of each Provider Agreement contain the same policies, procedures, performance standards, and payment method requirements.

40.    The Provider Agreements specify DIRECTV's mandatory policies and procedures. And they obligate DIRECTV's intermediaries to hand them down to the technicians.

41.    The Provider Agreements enable DIRECTV to control nearly every facet of the technician's work, down to the "DIRECTV" shirts they are required to wear and the "DIRECTV" ID card they must show customers.  DIRECTV assigns each technician a scope of work described in a Work Order that DIRECTV itself delivers to each technician via a centralized computer software system that DIRECTV controls.  DIRECTV mandates particularized methods and standards of installation to assure DIRECTV's equipment is installed according to the dictates of DIRECTV's policies and procedures. As a consequence, each technician's essential job duties are virtually identical no matter where performed and no matter which intermediary the technician is ostensibly working for.

42.    Plaintiffs typically started their workdays after receiving daily work schedules assigned through DIRECTV's dispatching systems. DIRECTV used a database program known as SIEBEL to coordinate the assignment of particular work orders to technicians using each technician's unique "Tech ID Number."

43.    After receiving their daily work schedules, Plaintiffs typically called the customer contact for each of their assigned jobs to confirm the timeframe

within which the technician expected to arrive at the customer's home. Plaintiffs then traveled to their first assigned job and thereafter continued to complete the jobs assigned by Defendants in the prescribed order on the daily work schedule. Upon arriving at each job site, Plaintiffs were required to check-in by telephone with DIRECTV via its dispatching system. At the end of an assigned job, Plaintiffs were required to report to DIRECTV that the installation was complete and, thereafter, worked directly with DIRECTV employees to activate the customer's service.

44.    When performing DIRECTV's work, Plaintiffs were required by Defendants to wear a uniform with DIRECTV insignia on it. Additionally, Plaintiffs were required to display DIRECTV insignia on vehicles driven to customers' homes for installations. Plaintiffs were required to purchase these uniforms and insignia, typically from Defendants.

45.    Although DIRECTV controls nearly every aspect of the technicians' work, Defendants insist that the technicians are not employees of DIRECTV, and often claim that they are not employees at all, rather that they are "independent contractors."

46.    Plaintiffs will show that the Provider Network is purposefully designed to exercise the right of control over its technician corps while avoiding the responsibility of complying with the requirements of the FLSA.

**DIRECTV's Workforce Consolidation: Acquisition of Providers by Defendants**

47.    DIRECTV's control over its purportedly independent provider partners is integral to its fissured employment scheme. So much so that DIRECTV regularly infuses these partners with what it labels internally as "extraordinary advance payments" in order to keep their dependent operations afloat while preserving an outward appearance of independence. When litigation or other circumstances make the "independent" relationship a negative for DIRECTV, DIRECTV simply absorbs these entities by acquisition.

48.    The absorption by DIRECTV is seamless, simply a resetting of titles without the functional modifications that normally accompany an arm's length acquisition. To date, there are only three "independent" HSPs still in operation—including the named Provider Defendant(s). Since DIRECTV developed its HSP Network, DIRECTV or one of these three remaining HSPs has purchased at least thirteen prior HSPs.[4] Below is a description of the prior HSPs for which the

---

[4] These include AeroSat, Bruister, Bluegrass Satellite and Security, ConnecTV, Directech NE, Directech SW, DTV Home Services II, LLC, Halsted

Plaintiffs technicians worked and how those HSPs were ultimately acquired by DIRECTV, MasTec, or Multiband.

**AeroSat**

49.    Upon information and belief, AeroSat was acquired by DTV Home Services II, LLC, which was then acquired by DIRECTV. DIRECTV ultimately acquired all of AeroSat's facilities. After the acquisition, DIRECTV conducted business out of AeroSat's locations, and personnel from AeroSat worked for DIRECTV. Many of AeroSat's employees were hired by DIRECTV.

50.    Upon information and belief, working conditions for installation technicians who worked for AeroSat remained substantially the same after DTV Home Services II, LLC, and then DIRECTV, acquired AeroSat. Likewise, technicians, including Plaintiffs, had substantially the same job(s) after DTV Home Services II, LLC, and then DIRECTV, acquired AeroSat. There were no broad changes to job functions, job titles, job responsibilities, and/or supervisors, and technicians' pay remained the same.

**ConnecTV**

51.    Upon information and belief, ConnecTV was acquired by DTV Home Services II, LLC, which was then acquired by DIRECTV. DIRECTV ultimately

Communications, Ironwood Communications, JP&D Digital Satellite, Michigan Microtech, Mountain Satellite and Security, and Skylink.

acquired all of ConnecTV's facilities. After the acquisition, DIRECTV conducted business out of ConnecTV's locations, and personnel from ConnecTV worked for DIRECTV. Many of ConnecTV's employees were hired by DIRECTV.

52.    Upon information and belief, working conditions for installation technicians who worked for ConnecTV remained substantially the same after DTV Home Services II, LLC, and then DIRECTV, acquired ConnecTV. Likewise, technicians, including Plaintiffs, had substantially the same job(s) after DTV Home Services II, LLC, and then DIRECTV, acquired ConnecTV. There were no broad changes to job functions, job titles, job responsibilities, and/or supervisors, and technicians' pay remained the same.

**DTV Home Services II, LLC**

53.    Upon information and belief, DIRECTV acquired DTV Home Services II, LLC, including all of its facilities. After the acquisition, DIRECTV conducted business out of DTV Home Services II, LLC's locations, and personnel from DTV Home Services II, LLC worked for DIRECTV. Many of DTV Home Services II, LLC's employees were hired by DIRECTV.

54.    Upon information and belief, working conditions for installation technicians who worked for DTV Home Services II, LLC remained substantially the same after DIRECTV acquired DTV Home Services II, LLC. Likewise,

technicians, including Plaintiffs, had substantially the same job(s) after DIRECTV acquired DTV Home Services II, LLC. There were no broad changes to job functions, job titles, job responsibilities, and/or supervisors, and technicians' pay remained the same.

## The Economic Reality: DIRECTV and its Provider Network Employ the Technicians

55.     DIRECTV exerts significant control over the Providers and Plaintiffs regarding the essential terms and conditions of Plaintiffs' employment.

56.     In fact, DIRECTV is the primary, if not the exclusive, client of the Providers, and accounts for the majority, if not all, of their revenue.

57.     Defendants are, and were at all times relevant herein, in the business of, among other things, providing satellite television service to businesses and consumers. Installation and repair of satellite dishes, receivers, and related equipment is an integral part of DIRECTV's business.

58.     Although hiring is generally done at the Providers' level, DIRECTV controls the details of Plaintiffs' day-to-day work.

59.     Through the Providers, DIRECTV exercises significant control over Plaintiffs' daily work lives, including, but not limited to, control over what work Plaintiffs performed, where that work was performed, when that work was performed, and how that work was performed.

60.    Through the Providers, DIRECTV also determined whether Plaintiffs'
work merited compensation, including setting the rate of pay to the Providers for
the Plaintiffs' work. Providers then administered payroll and provided Plaintiffs
with their paychecks.

61.    DIRECTV, through the Providers, exerted control over Plaintiffs
sufficient to establish that they employed Plaintiffs. DIRECTV and the Providers
constitute employers subject to liability under the FLSA.

62.    DIRECTV required Plaintiffs to hold themselves out as agents of
DIRECTV.

63.    DIRECTV promulgates detailed instructions for how installations are
to be completed. Plaintiffs received these instructions and performed the work as
DIRECTV required. Plaintiffs were not given meaningful discretion in how they
performed installations.

64.    DIRECTV publishes training materials that technicians such as
Plaintiffs are required to review.

65.    DIRECTV requires that all technicians obtain a certification from the
Satellite Broadcasting & Communications Association ("SBCA") before that
technician may be assigned DIRECTV work orders. This requirement allows
DIRECTV to mandate certain training for all technicians.

66.    DIRECTV utilizes a network of quality control personnel and field managers to oversee the work performed by Plaintiffs.

67.    DIRECTV and Providers' quality control personnel reviewed Plaintiffs' work, and Plaintiffs were subject to chargebacks and/or rollbacks based on those reviews.

68.    Defendants are each engaged in interstate commerce and, upon information and belief, Defendants each gross more than Five Hundred Thousand Dollars in revenue per year.

69.    The net effect of Defendants' policies and practices, instituted by DIRECTV and administered by Provider Defendants, is that Defendants willfully fail to pay minimum wage and overtime compensation to Plaintiffs, and willfully fail to keep accurate time records in order to save payroll costs.

**The Piece-Rate System: DIRECTV's Unlawful Payment Scheme**

70.    As with other aspects of Plaintiffs' work, DIRECTV effectively controlled Plaintiffs' pay through the common policies and practices mandated in its Provider Agreements.

71.    Every Plaintiff was paid pursuant to the piece-rate payment scheme that is utilized throughout DIRECTV's network.

16

72.    There was no contract, memorandum, or other document between Plaintiffs and Defendants properly memorializing or explaining this pay system.

73.    Under this system, Plaintiffs were not paid for all hours they worked for Defendants. Rather, they were paid on a per-task (a/k/a piece rate) basis for satisfactorily completing a DIRECTV-approved satellite installation. The piece-rate system only pays technicians for certain enumerated "productive" tasks but fails to compensate technicians for all necessary work they perform.

74.    In addition to the certain tasks DIRECTV designated as compensable, Plaintiffs performed other work each week during the relevant time period for Defendants, such as assembling satellite dishes, driving to and between job assignments, reviewing and receiving schedules, calling customers to confirm installations, obtaining required supplies, assisting other technicians with installations, performing required customer educations, contacting DIRECTV to report in or activate service, working on installations that were not completed, and working on "rollback" installations where Plaintiffs had to return and perform additional work on installations previously completed.

75.    Plaintiffs were not paid for these integral and indispensable tasks that were necessary to their principal activity of installing and repairing DIRECTV satellite television service.

76. Defendants did not pay Plaintiffs' wages free and clear. Rather, Plaintiffs were subjected to "chargebacks" wherein Defendants would deduct amounts from Plaintiffs' pay if there were issues with an installation, or questions from the customer, generally up to 90 days after the customer's service was activated. The chargeback would occur for a variety of reasons, many of which were out of Plaintiffs' control, including, for example, faulty equipment, improper installation, customer calls regarding how to operate their remote control, or a customer's failure to give greater than a 95% satisfaction rating for the services provided by the technician.

77. In addition to chargebacks, those technicians who were misclassified as independent contractors were also required to purchase supplies necessary to perform installations, such as screws, poles, concrete, and cables. Nor were these independent contractors paid an overtime premium for work done beyond 40 hours in a workweek.

78. The required purchase of these supplies for Defendants' financial benefit reduced the wages of these technicians, including overtime pay.

79. Plaintiffs routinely worked more than 40 hours per week for Defendants, as alleged in more detail below.

80.    Plaintiffs were not paid the overtime premium required by applicable law for work done beyond 40 hours in a given workweek.

81.    Defendants' policy and practice of imposing "chargebacks," failing to compensate Plaintiffs for all hours worked, and failing to reimburse Plaintiffs' necessary business expenses resulted in Plaintiffs routinely working more than forty hours in a work week while being denied overtime pay and being subjected to an effective wage rate below that required by applicable law.

82.    Plaintiffs intend to prove that Defendants' piece-rate pay system constitutes an effort to deliberately deny Plaintiffs earned wages and overtime compensation in violation of the FLSA.

## LITIGATION HISTORY

### *Lang v. DIRECTV*

83.    A number of Plaintiffs in this case, including Benoni Amponsah, Ronald Brooks, Bruce Case, Henry Cooper, Pedro Davila, Albert Exum, Dominique Fennell, James Gladden, Jodi Hodges, Anthony Jelks, Ameer Lawton, Mickonen Mickael, Kerry Page, Derek Pegues, Heru Tchaas, and Calvin Williams, previously opted in to a conditionally certified FLSA action pending in the Eastern District of Louisiana styled *Lang v. DIRECTV, et al*., No. 10-1085-NJB.  The *Lang* case was pending as a collective action until the court, on August 30, 2013, granted

the parties' joint motion decertifying the class, dismissed the opt-in plaintiffs' claims without prejudice to pursue the individual claims raised herein, and ordered the statute of limitations for each opt-in plaintiff to continue to be tolled for 60 days from the date of the order. *Lang v. DIRECTV*, Case No. 10-1085-NJB (E.D. La.) (Docs. 466, 466-1).

### *Acfalle v. DIRECTV*

84.   Within the 60 days granted by the *Lang* court, Plaintiffs Benoni Amponsah, Ronald Brooks, Bruce Case, Henry Cooper, Pedro Davila, Albert Exum, Dominique Fennell, James Gladden, Jodi Hodges, Anthony Jelks, Ameer Lawton, Mickonen Mickael, Kerry Page, Heru Tchaas, and Calvin Williams, and also Cody Gardino and Charles McWilliams filed an action in the Central District of California on November 1, 2013. *Acfalle v. DirecTV*, Case No. 13-8108 ABC (Ex) (Doc. 1) (amended on December 23, 2013, by Doc. 9).[5] On July 22, 2014, the court entered an order granting, in part, Defendants' Motions to Sever Claims of Plaintiffs. (Doc. 71) In that order, the court "dropped" 277 plaintiffs with FLSA-only claims, dismissing them without prejudice to refile their claims closer to their home states or where they were employed, that is, "where they performed their

---

[5] Plaintiff Derek Pegues joined his individual claims by way of the amended complaint filed December 23, 2013.

work." (Doc. 71, at 5, 8.)  The court tolled the statute of limitations for 90 days to permit Plaintiffs to refile their claims. (Doc. 71, at 8.)

85.    Within the 90 days granted by the *Acfalle* court, Plaintiffs Benoni Amponsah, Ronald Brooks, Bruce Case, Henry Cooper, Pedro Davila, Albert Exum, Dominique Fennell, Cody Gardino, James Gladden, Jodi Hodges, Anthony Jelks, Ameer Lawton, Charles McWilliams, Mickonen Mickael, Kerry Page, Heru Tchaas, and Calvin Williams filed the instant Complaint, joining their individual claims against Defendants.

### *Arnold v. DIRECTV*

86.    Plaintiffs Courtney Gayle, Jose Isturiz, Winston Tew, and Olbin Velez previously filed consents to become party plaintiffs in *Arnold v. DIRECTV*, No. 10-0352-JAR, originally filed on March 2, 2010, pending in the Eastern District of Missouri. Pursuant to a Proposed Case Management Plan (Doc. 200) and Amended Case Management Order (Doc. 216), the court redefined the claims into subclasses (Doc. 220, Second Amended Complaint) and entered an order which, in pertinent part, directed Plaintiffs to decertify and dismiss the claims of certain opt-in plaintiffs, including Courtney Gayle, Jose Isturiz, Winston Tew, and Olbin Velez, without prejudice to pursue the individual claims raised herein, and ordered the statute of limitations for each opt-in plaintiff to continue to be tolled for 90 days

from the date of the order. *Arnold v. DIRECTV*, Case No. 10-0325-JAR (E.D. Mo.)

(Doc. 221, Notice of Voluntary Decertification).[6]

87.     Within the 90 days granted by the *Arnold* court, Plaintiffs Courtney

Gayle, Jose Isturiz, Winston Tew, and Olbin Velez joined their individual claims in

this action.

## PLAINTIFFS' CLAIMS

### Benoni Amponsah

88.     Plaintiff Benoni Amponsah is an individual residing in the state of

Georgia. Between approximately 2010 and 2011, Benoni Amponsah routinely

worked more than 40 hours per week as a technician for DIRECTV and DTV

Home Services II, LLC in the state of Georgia, and was unlawfully deprived of

overtime compensation.

89.     In fact, Benoni Amponsah spent in excess of 60 hours per week

performing tasks for the benefit of Defendants, many unpaid.

90.     Defendants' employment policies and practices detailed herein (*i.e.*,

imposing "chargebacks," failing to compensate Benoni Amponsah for all hours

worked,   and   failing   to   reimburse   Benoni   Amponsah's   necessary   business

---

[6] Plaintiff Jose Isturiz is not identified on the list of opt-in plaintiffs dismissed from *Arnold* because certain of his claims – those for time served as a W-2 employee of a HSP and not for time claimed herein – remain active in *Arnold*.

expenses) resulted in Benoni Amponsah being routinely subjected to working at an effective wage rate of less than the applicable minimum wage.

91.    Benoni Amponsah brings claims against DIRECTV.

**Ronald Brooks**

92.    Plaintiff Ronald Brooks is an individual residing in the state of Georgia. Between approximately December 2011 and November 2012, Ronald Brooks routinely worked more than 40 hours per week as a technician for DIRECTV and MasTec in the state of Georgia, and was unlawfully deprived of overtime compensation.

93.    In fact, Ronald Brooks spent in excess of 60 hours per week performing tasks for the benefit of Defendants, many unpaid.

94.    Defendants' employment policies and practices detailed herein (*i.e.*, imposing "chargebacks," failing to compensate Ronald Brooks for all hours worked, and failing to reimburse Ronald Brooks' necessary business expenses) resulted in Ronald Brooks being routinely subjected to working at an effective wage rate of less than the applicable minimum wage.

95.    Ronald Brooks brings claims against DIRECTV and MasTec.

**Bruce Case**

96.    Plaintiff Bruce Case is an individual residing in the state of Georgia. Between approximately January 2011 and October 2011, Bruce Case routinely worked more than 40 hours per week as a technician for DIRECTV and DTV Home Services II, LLC in the state of Georgia, and was unlawfully deprived of overtime compensation.

97.    In fact, Bruce Case spent in excess of 60 hours per week performing tasks for the benefit of Defendants, many unpaid.

98.    Defendants' employment policies and practices detailed herein (*i.e.*, imposing "chargebacks," failing to compensate Bruce Case for all hours worked, and failing to reimburse Bruce Case's necessary business expenses) resulted in Bruce Case being routinely subjected to working at an effective wage rate of less than the applicable minimum wage.

99.    Bruce Case brings claims against DIRECTV.

**Henry Cooper**

100.    Plaintiff Henry Cooper is an individual residing in the state of North Carolina. Between approximately May 2009 and October 2009, Henry Cooper routinely worked more than 40 hours per week as a technician for DIRECTV and

MasTec in the state of Georgia, and was unlawfully deprived of overtime compensation.

101.   In fact, Henry Cooper spent approximately 50 to 60 hours per week performing tasks for the benefit of Defendants, many unpaid.

102.   Defendants' employment policies and practices detailed herein (*i.e.*, imposing "chargebacks," failing to compensate Henry Cooper for all hours worked, and failing to reimburse Henry Cooper's necessary business expenses) resulted in Henry Cooper being routinely subjected to working at an effective wage rate of less than the applicable minimum wage.

103.   Henry Cooper brings claims against DIRECTV.

**Pedro Davila**

104.   Plaintiff Pedro Davila is an individual residing in the state of Georgia. Between approximately July 2010 and February 2012, Pedro Davila routinely worked more than 40 hours per week as a technician for DIRECTV, DTV Home Services II, LLC, and MasTec primarily in the state of Georgia, and also in South Carolina, and was unlawfully deprived of overtime compensation.

105.   In fact, Pedro Davila spent in excess of 60 hours per week performing tasks for the benefit of Defendants, many unpaid.

106.   Defendants' employment policies and practices detailed herein (*i.e.*, imposing "chargebacks," failing to compensate Pedro Davila for all hours worked, and failing to reimburse Pedro Davila's necessary business expenses) resulted in Pedro Davila being routinely subjected to working at an effective wage rate of less than the applicable minimum wage.

107.   Pedro Davila brings claims against DIRECTV and MasTec.

**Albert Exum**

108.   Plaintiff Albert Exum is an individual residing in the state of Georgia. Between approximately February 2010 and August 2010, Albert Exum routinely worked more than 40 hours per week as a technician for DIRECTV and DTV Home Services II, LLC in the state of Georgia, and was unlawfully deprived of overtime compensation.

109.   In fact, Albert Exum spent in excess of 60 hours per week performing tasks for the benefit of Defendants, many unpaid.

110.   Defendants' employment policies and practices detailed herein (*i.e.*, imposing "chargebacks," failing to compensate Albert Exum for all hours worked, and failing to reimburse Albert Exum's necessary business expenses) resulted in Albert Exum being routinely subjected to working at an effective wage rate of less than the applicable minimum wage.

111.   Albert Exum brings claims against DIRECTV.

**Dominique Fennell**

112.   Plaintiff Dominique Fennell is an individual residing in the state of Georgia. Between approximately May 2012 and March 2013, Dominique Fennell routinely worked more than 40 hours per week as a technician for DIRECTV and MasTec in the state of Georgia, and was unlawfully deprived of overtime compensation.

113.   In fact, Dominique Fennell spent in excess of 60 hours per week performing tasks for the benefit of Defendants, many unpaid.

114.   Defendants' employment policies and practices detailed herein (*i.e.*, imposing "chargebacks," failing to compensate Dominique Fennell for all hours worked, and failing to reimburse Dominique Fennel's necessary business expenses) resulted in Dominique Fennell being routinely subjected to working at an effective wage rate of less than the applicable minimum wage.

115.   Dominique Fennell brings claims against DIRECTV and MasTec.

**Cody Gardino**

116.   Plaintiff Cody Gardino is an individual residing in the state of Tennessee. Between approximately August 2010 and November 2012, Cody Gardino routinely worked more than 40 hours per week as a technician for

DIRECTV and DTV Home Services II, LLC in the state of Georgia, and was unlawfully deprived of overtime compensation.

117.  In fact, Cody Gardino spent in excess of 60 hours per week performing tasks for the benefit of Defendants, many unpaid.

118.  Defendants' employment policies and practices detailed herein (*i.e.*, imposing "chargebacks," failing to compensate Cody Gardino for all hours worked, and failing to reimburse Cody Gardino's necessary business expenses) resulted in Cody Gardino being routinely subjected to working at an effective wage rate of less than the applicable minimum wage.

119.  Cody Gardino brings claims against DIRECTV.

**James Gladden**

120.  Plaintiff James Gladden is an individual residing in the state of Georgia. Between approximately May 2009 and December 2011, James Gladden routinely worked more than 40 hours per week as a technician for DIRECTV and DTV Home Services II, LLC primarily in the state of Georgia and also in Alabama, and was unlawfully deprived of overtime compensation.

121.  In fact, James Gladden spent in excess of 60 hours per week performing tasks for the benefit of Defendants, many unpaid.

122.   Defendants' employment policies and practices detailed herein (*i.e.*, imposing "chargebacks," failing to compensate James Gladden for all hours worked, and failing to reimburse James Gladden's necessary business expenses) resulted in James Gladden being routinely subjected to working at an effective wage rate of less than the applicable minimum wage.

123.   James Gladden brings claims against DIRECTV.

**Jodi Hodges**

124.   Plaintiff Jodi Hodges is an individual residing in the state of North Carolina. Between approximately July 2009 and October 2009, Jodi Hodges routinely worked more than 40 hours per week as a technician for DIRECTV and DTV Homes Services II, LLC in the state of Georgia, and was unlawfully deprived of overtime compensation.

125.   In fact, Jodi Hodges spent in excess of 60 hours per week performing tasks for the benefit of Defendants, many unpaid.

126.   Defendants' employment policies and practices detailed herein (*i.e.*, imposing "chargebacks," failing to compensate Jodi Hodges for all hours worked, and failing to reimburse Jodi Hodges' necessary business expenses) resulted in Jodi Hodges being routinely subjected to working at an effective wage rate of less than the applicable minimum wage.

127. Jodi Hodges brings claims against DIRECTV.

**Anthony Jelks**

128. Plaintiff Anthony Jelks is an individual residing in the state of Georgia. Between approximately July 2010 and May 2011, Anthony Jelks routinely worked more than 40 hours per week as a technician for DIRECTV and MasTec in the state of Georgia, and was unlawfully deprived of overtime compensation.

129. In fact, Anthony Jelks spent approximately 55 hours per week performing tasks for the benefit of Defendants, many unpaid.

130. Defendants' employment policies and practices detailed herein (*i.e.*, imposing "chargebacks," failing to compensate Anthony Jelks for all hours worked, and failing to reimburse Anthony Jelks' necessary business expenses) resulted in Anthony Jelks being routinely subjected to working at an effective wage rate of less than the applicable minimum wage.

131. Anthony Jelks brings claims against DIRECTV and MasTec.

**Ameer Lawton**

132. Plaintiff Ameer Lawton is an individual residing in the state of New York. Between approximately 2003 and March 2009, Ameer Lawton routinely worked more than 40 hours per week as a technician for DIRECTV, MasTec, and

ConnecTV primarily in the state of Georgia and also in Alabama, Louisiana, and North Carolina, and was unlawfully deprived of overtime compensation.

133.  In fact, Ameer Lawton spent in excess of 50 hours per week performing tasks for the benefit of Defendants, many unpaid.

134.  Defendants' employment policies and practices detailed herein (*i.e.*, failing to compensate Ameer Lawton for all hours worked and failing to reimburse Ameer Lawton's necessary business expenses) resulted in Ameer Lawton being routinely subjected to working at an effective wage rate of less than the applicable minimum wage.

135.  Ameer Lawton brings claims against DIRECTV.

**Charles McWilliams**

136.  Plaintiff Charles McWilliams is an individual residing in the state of Georgia. Between approximately July 2010 and November 2011, Charles McWilliams routinely worked more than 40 hours per week as a technician for DIRECTV and MasTec in the state of Georgia, and was unlawfully deprived of overtime compensation.

137.  In fact, Charles McWilliams spent approximately 55 hours per week performing tasks for the benefit of Defendants, many unpaid.

138.   Defendants' employment policies and practices detailed herein (*i.e.*, imposing "chargebacks," failing to compensate Charles McWilliams for all hours worked, and failing to reimburse Charles McWilliams' necessary business expenses) resulted in Charles McWilliams being routinely subjected to working at an effective wage rate of less than the applicable minimum wage.

139.   Charles McWilliams brings claims against DIRECTV and MasTec.

**Mickonen Mickael**

140.   Plaintiff Mickonen Mickael is an individual residing in the state of Georgia. Between approximately 2001 and the present, Mickonen Mickael routinely worked more than 40 hours per week as a technician for DIRECTV, DTV Home Services II, LLC, and MasTec in the state of Georgia, and was unlawfully deprived of overtime compensation.

141.   In fact, Mickonen Mickael spent in excess of 50 hours per week performing tasks for the benefit of Defendants, many unpaid.

142.   Defendants' employment policies and practices detailed herein (*i.e.*, imposing "chargebacks," failing to compensate Mickonen Mickael for all hours worked, and failing to reimburse Mickonen Mickael's necessary business expenses) resulted in Mickonen Mickael being routinely subjected to working at an effective wage rate of less than the applicable minimum wage.

143.   Mickonen Mickael brings claims against DIRECTV and MasTec.

**Kerry Page**

144.   Plaintiff Kerry Page is an individual residing in the state of Georgia. Between approximately October 2009 and February 2010, Kerry Page routinely worked more than 40 hours per week as a technician for DIRECTV and MasTec in the state of Georgia, and was unlawfully deprived of overtime compensation.

145.   In fact, Kerry Page spent in excess of 60 hours per week performing tasks for the benefit of Defendants, many unpaid.

146.   Defendants' employment policies and practices detailed herein (*i.e.*, imposing "chargebacks," failing to compensate Kerry Page for all hours worked, and failing to reimburse Kerry Page's necessary business expenses) resulted in Kerry Page being routinely subjected to working at an effective wage rate of less than the applicable minimum wage.

147.   Kerry Page brings claims against DIRECTV.

**Derek Pegues**

148.   Plaintiff Derek Pegues is an individual residing in the state of Georgia. Between approximately August 2009 and July 2013, Derek Pegues routinely worked more than 40 hours per week as a technician for DIRECTV,

DTV Home Services II, LLC, and MasTec primarily in the state of Georgia and also in Florida, and was unlawfully deprived of overtime compensation.

149.    In fact, Derek Pegues spent approximately 60 hours per week performing tasks for the benefit of Defendants, many unpaid.

150.    Defendants' employment policies and practices detailed herein (*i.e.*, imposing "chargebacks," failing to compensate Derek Pegues for all hours worked, and failing to reimburse Derek Pegues's necessary business expenses) resulted in Derek Pegues being routinely subjected to working at an effective wage rate of less than the applicable minimum wage.

151.    Derek Pegues brings claims against DIRECTV and MasTec.

**Heru Tchaas**

152.    Plaintiff Heru Tchaas is an individual residing in the state of Florida. Between approximately 2004 and June 2012, Heru Tchaas routinely worked more than 40 hours per week as a technician for DIRECTV, AeroSat, MasTec, and DTV Home Services II, LLC primarily in the states of Georgia and also in Louisiana, and was unlawfully deprived of overtime compensation.

153.    In fact, Heru Tchaas spent approximately 45 hours per week performing tasks for the benefit of Defendants, many unpaid.

154.   Defendants' employment policies and practices detailed herein (*i.e.*, imposing "chargebacks," failing to compensate Heru Tchaas for all hours worked, and failing to reimburse Heru Tchaas' necessary business expenses) resulted in Heru Tchaas being routinely subjected to working at an effective wage rate of less than the applicable minimum wage.

155.   Heru Tchaas brings claims against DIRECTV.

**Calvin Williams**

156.   Plaintiff Calvin Williams is an individual residing in the state of Georgia. Between approximately 2008 and 2011, Calvin Williams routinely worked more than 40 hours per week as a technician for DIRECTV, DTV Home Services II, LLC, and Multiband primarily in the state of Georgia and also in Ohio, and was unlawfully deprived of overtime compensation.

157.   In fact, Calvin Williams spent approximately 60 hours per week performing tasks for the benefit of Defendants, many unpaid.

158.   Defendants' employment policies and practices detailed herein (*i.e.*, imposing "chargebacks," failing to compensate Calvin Williams for all hours worked, and failing to reimburse Calvin Williams' necessary business expenses) resulted in Calvin Williams being routinely subjected to working at an effective wage rate of less than the applicable minimum wage.

159.   Calvin Williams brings claims against DIRECTV and Multiband.

**Courtney Gayle**

160.   Plaintiff Courtney Gayle is an individual residing in the state of Georgia. Between approximately February 2010 and January 2012, Courtney Gayle routinely worked more than 40 hours per week as a technician for DIRECTV and MasTec in the state of Georgia, and was unlawfully deprived of overtime compensation.

161.   In fact, Courtney Gayle spent in excess of 60 hours per week performing tasks for the benefit of Defendants, many unpaid.

162.   Defendants' employment policies and practices detailed herein (*i.e.*, imposing "chargebacks," failing to compensate Courtney Gayle for all hours worked, and failing to reimburse Courtney Gayle's necessary business expenses) resulted in Courtney Gayle being routinely subjected to working at an effective wage rate of less than the applicable minimum wage.

163.   Courtney Gayle brings claims against DIRECTV and MasTec.

**Jose Isturiz**

164.   Plaintiff Jose Isturiz is an individual residing in the state of Georgia. Between approximately May 2012 and September 2013, Jose Isturiz routinely

worked more than 40 hours per week as a technician for DIRECTV and MasTec in the state of Georgia, and was unlawfully deprived of overtime compensation.

165.   In fact, Jose Isturiz spent in excess of 60 hours per week performing tasks for the benefit of Defendants, many unpaid.

166.   Defendants' employment policies and practices detailed herein (*i.e.*, imposing "chargebacks," failing to compensate Jose Isturiz for all hours worked, and failing to reimburse Jose Isturiz' necessary business expenses) resulted in Jose Isturiz being routinely subjected to working at an effective wage rate of less than the applicable minimum wage.

167.   Jose Isturiz brings claims against DIRECTV and MasTec.

**Winston Tew**

168.   Plaintiff Winston Tew is an individual residing in the state of Alabama. Between approximately March 2012 and October 2012, Winston Tew routinely worked more than 40 hours per week as a technician for DIRECTV and DTV Home Services II, LLC primarily in the state of Georgia and also in Alabama, and was unlawfully deprived of overtime compensation.

169.   In fact, Winston Tew spent approximately 60 hours per week performing tasks for the benefit of Defendants, many unpaid.

170.   Defendants' employment policies and practices detailed herein (*i.e.*, failing to compensate Winston Tew for all hours worked and failing to reimburse Winston Tew's necessary business expenses) resulted in Winston Tew being routinely subjected to working at an effective wage rate of less than the applicable minimum wage.

171.   Winston Tew brings claims against DIRECTV.

**Olbin Velez**

172.   Plaintiff Olbin Velez is an individual residing in the state of Georgia. Between approximately September 2011 and the present, Olbin Velez routinely worked more than 40 hours per week as a technician for DIRECTV and DTV Home Services II, LLC in the state of Georgia, and was unlawfully deprived of overtime compensation.

173.   In fact, Olbin Velez spent in excess of 60 hours per week performing tasks for the benefit of Defendants, many unpaid.

174.   Defendants' employment policies and practices detailed herein (*i.e.*, imposing "chargebacks," failing to compensate Olbin Velez for all hours worked, and failing to reimburse Olbin Velez's necessary business expenses) resulted in Olbin Velez being routinely subjected to working at an effective wage rate of less than the applicable minimum wage.

175.   Olbin Velez brings claims against DIRECTV.

## COUNT I

### Violation of the Fair Labor Standards Act of 1938

*By each Plaintiff individually against Plaintiff's previously identified joint-employer-Defendant(s)*

176.   Plaintiffs re-allege all allegations set forth above.

177.   At all times material herein, Plaintiffs have been entitled to the rights, protections, and benefits provided under the FLSA, 29 U.S.C. §§ 201, *et seq.*

178.   The FLSA regulates, among other things, the payment of overtime pay by employers whose employees are engaged in interstate commerce, or engaged in the production of goods for commerce, or employed in an enterprise engaged in commerce or in the production of goods for commerce. 29 U.S.C. § 207(a)(1).

179.   The FLSA also regulates, among other things, the payment of minimum wage by employers whose employees are engaged in interstate commerce, or engaged in the production of goods for commerce, or employed in an enterprise engaged in commerce or in the production of goods for commerce. 29 U.S.C. § 206(a).

180.   Defendants are subject to the minimum wage and overtime pay requirements of the FLSA because they are enterprises engaged in interstate commerce and their employees are engaged in commerce.

181.   Defendants violated the FLSA by failing to pay all minimum wage and overtime wages due to Plaintiffs, failing to properly calculate Plaintiffs' regular rate of pay for determining the overtime premium pay owed, and improperly deducting money from Plaintiffs' pay.

182.   As to defendant DIRECTV, Plaintiffs are entitled to damages equal to the mandated minimum wage and overtime premium pay within the three years preceding the filing their consent to join forms in the *Lang* or *Arnold* litigation, plus periods of equitable tolling, because DIRECTV acted willfully and knew or showed reckless disregard in their violation of the FLSA.

183.   As to the Provider Defendant(s) against which each Plaintiff makes a claim, Plaintiffs are entitled to damages equal to the mandated minimum wage and overtime premium pay within the three years preceding the filing their original complaint in this action, *i.e.*, November 1, 2013,[7] plus periods of equitable tolling,

_____

[7] Or from the date of filing the amended complaint, *i.e.*, December 23, 2013 for Plaintiff Derek Pegues, or from the date of this complaint for *Arnold* Plaintiffs Courtney Gayle, Jose Isturiz, Winston Tew, and Olbin Velez.

because Provider Defendant(s) acted willfully and knew or showed reckless disregard in its violation of the FLSA.

184.  Pursuant to Defendants' policies and practices, Defendants willfully violated the FLSA by refusing and failing to pay Plaintiffs overtime and minimum wages. In the course of perpetrating these unlawful practices, Defendants willfully failed to keep accurate records of all hours worked by, compensation paid to, and expenses incurred by Plaintiffs.

185.  Defendants have acted neither in good faith nor with reasonable grounds to believe that their actions and omissions were not a violation of the FLSA. As a result thereof, Plaintiffs are each entitled to recover an award of liquidated damages in an amount equal to the amount of unpaid wages as described by Section 16(b) of the FLSA, codified at 29 U.S.C. § 216(b). Alternatively, should the Court find Defendants acted in good faith in failing to pay Plaintiffs minimum wage and overtime compensation, Plaintiffs are each entitled to an award of prejudgment interest at the applicable legal rate.

186.  As a result of these violations of the FLSA's minimum wage and overtime pay provisions, compensation has been unlawfully withheld from Plaintiffs by Defendants. Accordingly, pursuant to 29 U.S.C. § 216(b), Defendants are liable for the unpaid minimum wages and overtime premium pay along with an

additional amount as liquidated damages, pre-judgment and post-judgment interest, reasonable attorneys' fees, and costs of this action.

187.   Plaintiffs request relief as described below and as permitted by law.

**WHEREFORE**, Plaintiffs demand a jury trial for all issues so triable, and request the Court enter judgment for Plaintiffs individually and:

a.   Award damages for unpaid minimum wages and unpaid overtime wages under 29 U.S.C. § 216(b);

b.   Award liquidated damages under 29 U.S.C. § 216(b);

c.   Award reasonable attorneys' fees under the Fair Labor Standards Act;

d.   Award costs of suit under 29 U.S.C. § 216(b);

e.   Award pre-judgment interest;

f.   Award damages including wages or other compensation lost as a result of the misclassification; and

g.   Grant any further relief that the Court may deem just and equitable.

Respectfully submitted this 15th day of October, 2014.

/s/ David A. Bain
David A. Bain (Georgia Bar No. 032449)
LAW OFFICES OF DAVID A. BAIN, LLC
1050 Promenade II
1230 Peachtree Street, NE
Atlanta, Georgia  30309
Tel: (404) 724-9990
Fax: (404) 724-9986
Email: dbain@bain-law.com

STUEVE SIEGEL HANSON LLP
George A. Hanson, *PHV Forthcoming*
MO Bar No. 43450
460 Nichols Road, Suite 200
Kansas City, Missouri 64112
Telephone:  816-714-7100
Facsimile:   816-714-7101
Email:  hanson@stuevesiegel.com

Ryan D. O'Dell, *PHV Forthcoming*
CA Bar No. 290802
500 West C Street, Suite 1750
San Diego, California 92101
Telephone:  619-400-5826
Facsimile:   619-400-5832
Email: odell@stuevesiegel.com

HEARIN, LLC
Jesse B. Hearin, III, *PHV Forthcoming*
La. Bar Roll No. 22422
1009 Carnation Street, Suite E
Slidell, Louisiana 70460
Telephone:  985-639-3377
Email: jbhearin@hearinllc.com

*Attorneys for Plaintiffs*