IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

|  |  |
|---|---|
| BENONI AMPONSAH,<br><br>              Plaintiffs,<br><br>v.<br><br>DIRECTV, LLC, et al.,<br><br>              Defendants. | Case No.  1:14-cv-03314-ODE |

**PLAINTIFFS' REPLY MEMORANDUM IN FURTHER
SUPPORT OF THEIR MOTION FOR LEAVE TO AMEND COMPLAINT**

Pursuant to the Court's Order of April 15, 2015 (Doc. 47), Plaintiffs filed their Motion for Leave to Amend the Complaint on May 15, 2015 (Doc. 49).  The MasTec and Multiband defendants (collectively referred to as "the HSP defendants") now object to that amendment on the same basic premise.  That is, both of the HSP defendants complain that there are insufficient facts to establish that the HSP defendants are "employers" under the Fair Labor Standards Act ("FLSA").  As described below, the proposed First Amended Complaint ("FAC"), alleges sufficient facts regarding the HSP defendants and Plaintiffs' Motion for Leave to Amend should be granted.

**I.     The First Amended Complaint alleges an employment relationship between the HSP defendants and their respective employees.**

Citing *Freeman v. Key Largo Volunteer Fire & Rescue Dep't, Inc.*, 494 F. App'x 940, 943 (11th Cir. 2012), the Court identified eight factors to be considered in determining whether a defendant is a joint employer under the FLSA.  *See* Order (Doc. 47) at 11.   These factors are tools to aid the court in determining the economic reality of the situation.  *See Layton v. DHL Express (USA), Inc.*, 686 F.3d 1172, 1177-1178 (11th Cir. 2012) (providing five principles by which the Court should be guided in applying the eight-factor test which "is not determined by mathematical formula").  Plaintiffs' proposed FAC touches on all eight of these factors.

The FAC should be read as a whole and in the light most favorable to Plaintiffs.  *See Speaker v. U.S. Dep't of Health and Human Servs. CDC & Prevention*, 623 F.3d 1371, 1383 (11th Cir. 2010) (reading a complaint as a whole); *Young Apartments, Inc. v. Town of Jupiter, Fla*., 529 F.3d 1027, 1037 (11th Cir. 2008) (explaining the standard of review under Fed. R. Civ. Proc. 12(b)(6)).   A brief survey of even selected facts from the FAC shows that Plaintiffs' proposed FAC alleges more than enough to support the conclusion that MasTec and Multiband were joint employers with DIRECTV.  As such, Plaintiffs' motion for leave should be granted.

### A.     The nature and degree of control of the workers.

The FAC has a number of averments not contained in the original complaint that touch on the degree of control exercised by the HSP defendants.  Specifically, the FAC explains how MasTec and Multiband coordinated the schedules of technicians on behalf of DIRECTV.  *See* FAC at pp. 8-10, at ¶¶ 7-10.[1]  Further, the HSP defendants implemented, monitored, and enforced a variety of DIRECTV policies that touched the way the technicians needed to perform their jobs.  *Id.*  The HSP defendants also had authority to reassign technicians and change their schedules and were ultimately responsible for the technicians completing DIRECTV's work.  *See* FAC at p. 11 ¶ 32-33.  As such, and based on other facts discussed below, the averments are more than enough to show that MasTec and Multiband exerted sufficient control over the Plaintiffs to be deemed employers under the FLSA.

### B.     The degree of supervision, direct or indirect, of the work.

While this factor is similar to the degree of control over Plaintiffs, there are also facts plead in the FAC which explain the amount of supervision the HSP

---

[1] Counsel apologizes for the automatic paragraph numbering error for certain paragraphs in the proposed Amended Complaint.  For clarity of citation, specific averments will be referred to herein by both page and paragraph number.  If Plaintiffs' motion for leave to amend is granted, Plaintiffs will correct those numbers without changing the prose of the allegations.

defendants exert over the Plaintiffs' work.  Specifically, the FAC explains that MasTec and Multiband monitor and enforce the technicians' compliance with DIRECTV's technical requirements.  *See* FAC at pp. 8-9, ¶ 7.  The HSP defendants also effected DIRECTV's required training programs at their offices. *See* FAC at p. 10, ¶ 10.  Finally, the FAC explains how all three defendants, including MasTec and Multiband, have quality control personnel that directly oversee the work performed by Plaintiffs.  *See* FAC at p. 18, ¶ 36.  If the work is not satisfactory, this oversight can translate into reduced compensation for the Plaintiffs.  *Id.* at ¶ 39.  These facts show that MasTec and Multiband exercised sufficient supervision over Plaintiffs to be deemed an employer.

> **C.     The power to determine the pay rates or the methods of payments of the workers.**

Paragraph 31 explains how DIRECTV and the HSP defendants interacted to set, control, and facilitate payments to Plaintiffs.  *See* FAC at p. 17, ¶ 31. Paragraphs 37 and 39 explain that both DIRECTV and its HSPs have quality control personnel whose reports impact whether a technician is paid for certain work.  *See* FAC at pp. 18-19, ¶¶ 37, 39.  As such, both DIRECTV and the HSP defendants are able to influence what work was compensable and what was not. This determination was then utilized by the HSPs who actually administered the payroll and issued paychecks.  *See* FAC at p. 17, ¶ 31.  In this way, all Defendants

had the power to at least partially determine either the amount of pay or the way in which that pay was delivered.  When read in the light most favorable to Plaintiffs, these allegations plausibly establish that Plaintiffs can show this factor.

> **D.     The right, directly or indirectly, to hire, fire, or modify the employment conditions of the workers.**

The FAC explains in some detail the interrelationship between the HSP defendants and DIRECTV in the hiring and firing process.  *See* FAC at pp. 9-10 at ¶ 9.  Later, the FAC explains how both DIRECTV and the HSPs have quality control personnel that check on the work of the technicians.  *See* FAC at p. 18, ¶¶ 36-39.  These allegations, when read as a whole, show that both DIRECTV and the HSP defendants have the ability, directly or indirectly, to hire, fire or modify the employment of the technicians.  Accordingly, the fourth factor is satisfied by Plaintiffs' FAC.

> **E.     Preparation of payroll and the payment of wages.**

Paragraph 31 explains how DIRECTV and the HSP defendants interacted to set, control, and facilitate payments to Plaintiffs.  *See* FAC at p. 17, ¶ 31. Throughout the FAC, defendants' piece-rate pay system is explained.  Under that system, technicians were only paid for performing particular compensable tasks. *See* FAC at pp. 20-22, ¶¶ 46, 50-54.  These tasks were scheduled by the Siebel system.  *See* FAC at pp. 12, 18; ¶¶ 15, 38.

Paragraphs 37 and 39 explain that both DIRECTV and its HSPs have quality control personnel whose reports impact whether a technician is paid for certain work. *See* FAC at pp. 18-19, ¶¶ 37, 39. In this way, both DIRECTV and the HSP defendants are able to influence what work was compensable and what was not. This determination was then utilized by the HSPs who actually administered the payroll and issued paychecks. *See* FAC at p. 17, ¶ 31. In this way, all defendants were involved in the payroll process.

**F.     Ownership of facilities where work occurred.**

Paragraph 10 explains that MasTec and Multiband each maintained warehouses and offices for Plaintiffs to pick up equipment and participate in training. *See* FAC p. 10, ¶ 10. It goes on to explain that the equipment belonged to DIRECTV and that trainings were mandated by DIRECTV. This, again, explains the interrelationship between the defendants and goes to show that both DIRECTV and the HSP defendants had an investment in the facilities that the technicians worked out of. Accordingly this factor favors Plaintiffs' claim.

**G.     Performance of a specialty job integral to the business.**

The FAC alleges that the Plaintiffs worked as technicians installing and repairing DIRECTV satellite television equipment. *See* FAC at p. 9, ¶ 1; p.16, ¶ 28. The FAC also alleges that "DIRECTV was the primary, if not the only, client

of the HSPs …." *See* FAC at p. 9, ¶ 4.  Accordingly, it can be reasonably inferred that the work performed by Plaintiffs was integral to the business of both MasTec and Multiband.

### H.      Investment in equipment and facilities.

As explained by the *Layton* court, the eighth factor looks at the comparative investments between the workers and the alleged employers.  *See Layton*, 686 F.3d. at 1176.   Here, the FAC explains how MasTec and Multiband have investments in their offices, quality control personnel, and administrative systems. *See* FAC at pp. 10-11, 18; ¶¶ 10, 32, 37-39.  The only investment alleged in the FAC by Plaintiffs is their time and a certification from the Satellite Broadcasting & Communications Association.  *See* FAC at p. 18, ¶ 35.  Accordingly, this factor favors a finding that the HSP defendants are employers under the FLSA.  As such, the arguments of MasTec and Multiband against the proposed amendment to the complaint should be rejected.

## II.      Plaintiffs are not required to name every subcontractor involved.

Both of the HSP defendants make much about the fact that certain of the Plaintiffs may have been engaged by third-party subcontractors not named in the FAC.  *See* MasTec Mem. (Doc. 50) at 5-6; Multiband Mem. (Doc. 51) at 2, 7.  But this argument is unavailing.  This Court has already ruled that there were sufficient

facts in the original Complaint to find DIRECTV to be an employer without all of the subcontractors having been identified. *See* Order (Doc. 47) at 18-20. And the HSPs' argument on this point has been rejected by courts in related cases. *See, e.g., Roslov v. DIRECTV*, Case No. 4:14-cv-00616-BSM (Doc. 34) at 5 (E.D. Ark. June 9, 2015) (overruling Defendants' motion to dismiss claiming "employment" had not been sufficiently plead in similar complaint).[2] There is simply no requirement that every possible defendant be named in a lawsuit. Rather, the Court's inquiry, as explained by the Eleventh Circuit in *Layton* and *Freeman*, is whether the Plaintiffs were sufficiently economically dependent upon the named defendants so as to establish an employment relationship under the FLSA's broad definition of employment. As explained above, the FAC states sufficient facts to carry this burden.

## III.   An inconsistent allegation is not fatal to Plaintiffs' claims.

Multiband attempts to seize upon a single phrase in a prior brief to argue that Plaintiff Williams has somehow waived his right to claim Multiband was also his employer. *See* Multiband Mem. at 2-4. This argument fails for at least two reasons. First, the standard of review for testing the adequacy of a complaint is

---

[2] DIRECTV had specifically argued the failure to identify subcontractors. *See* DIRECTV Mem. in Supp. (Doc.8) at 9, *Roslov*, Case No. 4:14-cv-0616.BSM (E.D. Ark Jan. 5, 2015).

generally limited to the four corners of the complaint and any documents referred to in that complaint. *See Sanctuary Surgical Ctr., Inc. v. Aetna, Inc.*, 56 Fed. Appx. 846, 851 n.4 (11th Cir. 2013). Secondly, even if the Court were to consider the statement in the prior briefing, Plaintiffs are allowed to make inconsistent allegations at the pleadings stage. *See* Fed. R. Civ. P. 8(d)(3) ("A party may state as many claims or defenses as it has, regardless of consistency."); *see also Citizens v. Southern Nat'l Bank v. American Surety Co.*, 347 F.2d 18, 23 (5th Cir. 1965) (noting that "the Federal Rules of Civil Procedure do not require consistency of pleadings."). Accordingly, the Court should not be swayed by this argument.

WHEREFORE Plaintiffs pray the Court enter an order granting Plaintiffs leave to file their proposed First Amended Complaint and for such other and further relief as the Court deems just and proper.

Respectfully submitted this 18th day of June, 2015.

        **LAW OFFICES OF DAVID A. BAIN, LLC**

        */s/ David A. Bain*
        David A. Bain (Georgia Bar No. 032449)
        1050 Promenade II
        1230 Peachtree Street, NE
        Atlanta, GA  30309
        Telephone:  404-724-9990
        Facsimile:  404-724-9986
        Email:  dbain@bain-law.com

        **STUEVE SIEGEL HANSON LLP**
        George A. Hanson, *admitted pro hac vice*
        460 Nichols Road
        Kansas City, MO  64112
        Telephone:  816-714-7100
        Email:  hanson@stuevesiegel.com

        Ryan D. O'Dell, *admitted pro hac vice*
        550 West C, Suite 1750
        San Diego, CA  92101
        Telephone:  619-400-5822
        Email:  odell@stuevesiegel.com

        **LEAR WERTS LLP**

        /s/ Todd C. Werts
        Todd C. Werts*, Admitted Pro Hac Vice*
        2003 W. Broadway, Suite 107
        Columbia, Missouri 65203
        Telephone: 573-875-1991
        Facsimile: 573-875-1985
        Email: werts@learwerts.com

        *Attorneys for Plaintiffs*

## **Local Rule 7.1D Certification**

Counsel for Plaintiffs hereby certifies that the text of this memorandum has been prepared with Times New Roman 14 point, one of the fonts and point selections approved by the Court in Local Rule 5.1B.

/s/ Todd C. Werts
Todd C. Werts, *Admitted Pro Hac Vice*
2003 W. Broadway, Suite 107
Columbia, Missouri 65203
Telephone: 573-875-1991
Facsimile: 573-875-1985
Email: werts@learwerts.com

## CERTIFICATE OF SERVICE

I hereby certify that on this day I have electronically filed the foregoing

**PLAINTIFFS' REPLY MEMORANDUM IN FURTHER SUPPORT OF THEIR**

**MOTION FOR LEAVE TO AMEND COMPLAINT** with the Clerk of the Court

using the CM/ECF system, which will automatically send an e-mail notification of

such filing to all attorneys of record.


Dated this 18th day of June, 2015.

/s/ Todd C. Werts
Todd C. Werts, *Admitted Pro Hac Vice*
2003 W. Broadway, Suite 107
Columbia, Missouri 65203
Telephone: 573-875-1991
Facsimile: 573-875-1985
Email: werts@learwerts.com