IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| BENONI AMPONSAH, PEDRO DAVILA, ALBERT EXUM, DOMINIQUE FENNELL, JODI HODGES, ANTHONY JELKS, CHARLES MCWILLIAMS, DEREK PEGUES, HERU TCHAAS, and OLBIN VELEZ,<br><br>           Plaintiffs,<br><br>v.<br><br>DIRECTV, LLC, and MASTEC NORTH AMERICA, INC.,<br><br>           Defendants. | CIVIL NO. 1:14-cv-03314-LMM<br>Judge Leigh Martin May<br><br>DECLARATION OF<br>GEORGE A. HANSON |

I, George A. Hanson, declare as follows:

      1.      I am a partner in the law firm Stueve Siegel Hanson LLP ("SSH"), and since the inception of the litigation have been the lead Plaintiffs' counsel in this wage and hour case against Defendants DIRECTV, LLC ("DIRECTV") and MasTec North America, Inc. ("MasTec") (collectively, "Defendants"). I have personal

knowledge of the matters set forth in this declaration and, if called to testify, I could and would testify as follows.

## Summary of the Litigation

2. This case is one of several filed across the country on behalf of technicians who installed and serviced DIRECTV systems. Plaintiffs have been pursuing these claims against DIRECTV for many years as participants in this case and in predecessor federal actions.

3. As described more fully below, each of the ten Plaintiffs in this case were formerly members of a conditionally certified collective action pending in the Eastern District of Louisiana styled *Lang v. DIRECTV, et al.*, Case No. 10-1085-NJB, or a collective action pending in the Eastern District of Missouri styled *Arnold v. DIRECTV*, Case No. 10-0352-JAR. Both the *Lang* and *Arnold* litigations began in March 2010 and spanned years during which conditional certification was granted, discovery was completed, and significant motion practice was completed before the parties agreed to a joint motion to decertify the *Lang* action and certain plaintiffs from the *Arnold* action. Thereafter, Plaintiffs filed their claims in a follow-up action, initially in the Central District of California—DIRECTV's home venue—and after the CDCA court "dropped" the non-California Plaintiffs to allow them to pursue

actions in their home jurisdictions, the claims of Georgia residents were refiled in this District.

4. This case was part of a set of related cases Plaintiffs' counsel was pursuing on behalf of technicians against DIRECTV and several of its contracting partners. In summary, at the time the Parties reached their omnibus settlement in January 2018, the related cases comprised of (1) 1,504 Claimants that joined a conditionally certified collective arbitration styled *Arndt v. DIRECTV, LLC,* AAA Case No. 30-160-00625-111, (2) 342 Plaintiffs filed in 32 federal courts across the country (of which this case was one), (3) 416 Plaintiffs in four mass joinder cases pending in the home districts of DIRECTV and its Home Service Providers ("HSPs"); and (4) 31 Claimants that filed individual arbitrations with AAA and JAMS. All told, Plaintiffs' counsel has expended more than 100,000 hours in attorney and staff time and incurred more than $3 million in litigation costs and expenses, in prosecuting all the related cases over an almost eight-year period.

5. The parties conducted extensive discovery in this case, including the production of over 827,366 pages of documents and the depositions of 32 witnesses. In addition, the parties exchanged over 3.4 million documents in coordinated discovery in the related litigation as a whole, and deposed over 666 witnesses. Beyond the wide-ranging discovery conducted in this nationwide litigation, both

sides briefed comprehensive summary judgment motions in no less than 12 cases, comprising over 100 separate motions. The orders issued on those motions were mixed. Defendants were successful on three motions, Plaintiffs survived summary judgment in five cases, and dispositive motions were pending in six cases. And courts issued divergent orders on nearly every discrete legal issue in the case.

## The Parties' Settlement

6. The settlements before the Court were the result of an intensive, weeks-long, arms-length negotiation. Michael Dickstein, a well-respected mediator with deep experience mediating a wide range of wage and hour litigation matters, conducted an in-person mediation with representatives for all the parties on November 30, 2017, in Dallas, Texas. All of the parties were represented by experienced and competent counsel who have handled numerous other wage and hour matters on class, collective, and individual bases.

7. Although substantial progress was made at the November 30 mediation, the parties were unable to reach final agreement at the mediation. Over the course of subsequent weeks, and with the assistance of Mr. Dickstein, the parties continued negotiation and ultimately reached an agreement on a framework for settling this and the other related cases on January 3, 2018.

8. Each of the Plaintiffs here has specifically agreed to his or her own individual settlement agreement with Defendants to resolve the claims that he asserted in this case. Those executed agreements are attached hereto as Exhibit A.

9. The settlement agreements do not effect general releases of all claims Plaintiffs may have against Defendants (for example, the releases contained in the settlement agreements do not extend to claims for workplace discrimination), but are limited to the release of disputes relating to any wage and hour issues including any such claims that were brought or could have been brought in this case.

10. In exchange for the release and dismissal of the case, each Plaintiff will receive between $3,500 and $29,400, based on the amount of time he spent working with the Defendants. More specifically, the settlement allocation formula, which is applied the same way for each Plaintiff, provides for an award of $200 for each week he worked overtime during the two-year FLSA statute of limitations. Under the allocation formula, no Plaintiff will receive less than a minimum payment of $3,500 regardless of the number of weeks worked in the limitations period. In the judgment of Plaintiffs' counsel, this consideration is fair and reasonable given the nature of the claims brought, the scope of potential damages and the attendant litigation risks.

11. In evaluating the fairness of this settlement, I oversaw a review of Plaintiffs' estimates of overtime weeks and time worked and an analysis of data

taken from DIRECTV's work order management system called Siebel. Because Plaintiffs were classified as independent contractors, their time was not tracked. It is my belief that these records provided the best available proxy for the missing time records. The analysis of the Siebel records I oversaw and Plaintiffs' own estimates indicate that Plaintiffs most commonly worked five days per week at an effective rate of approximately $15.00 per hour. Thus, the $200 per overtime week provided by this settlement equates to over 13 hours of additional pay per week at the rate of $15.00 per hour. Said another way, the settlement provides over 2.5 hours of additional pay for each day worked in a typical overtime week. Of course, if Defendants were successful on their argument than only the 0.5 overtime premium was recoverable, the settlement provides the equivalent of over 5 hours of additional pay per day. Though their time estimates varied somewhat, Plaintiffs generally testified that they worked between 9 and 10 hours per day and that 2 to 4 of those hours were unpaid. Because the settlement effectively provides back pay for between 2 and 4 hours (depending on which side's proffered calculation is used) per day, it is my estimation that the settlement provides the Plaintiffs with close to "make whole" relief.

  12. Another factor affecting the fairness of the settlement was the risk of how a jury may view the claims at issue in this case. Indeed, a two-week federal jury

trial in the District of Arizona in a related case late last year resulted in a defense verdict in favor of DIRECTV, finding that workers classified as independent contractors were not "employees" of DIRECTV under the FLSA.

Attorney's Fees and Costs

13. Each of the Plaintiffs' settlement agreements also provide that Defendants will pay Plaintiffs' counsel the discounted sum of $26,000 per Plaintiff for attorney's fees and costs.

14. As noted above, this case is a continuation of the *Lang* and *Arnold* actions and part of a wide-ranging nationwide litigation involving multiple related actions. Significant work was performed in related actions that benefited the litigation as a whole. When the Joint Panel for Multidistrict Litigation agreed with Defendants and declined to consolidate this litigation into a formal MDL, the Panel encouraged the parties to internally coordinate discovery. Consistent with that charge, and candidly after several rounds of discovery motion practice in related actions, the Parties eventually agreed to a global discovery protocol via which documents and data related to this case (and the overall litigation) were produced. Similarly, the Parties conducted scores of depositions under multiple case captions to prevent witnesses from having to be deposed more than once. For that reason, Plaintiffs believe the most appropriate method for evaluating the agreed attorney

fees and expenses paid under this settlement is to consider the pro rata share fairly attributable to the *Amponsah* Plaintiffs for the fees and costs expended on the litigation as a whole.

15. Plaintiffs' counsel maintained detailed time records throughout the litigation. Those records reflect an investment of over $25 million in lodestar in the post-*Lang* and *Arnold* individual actions at a blended hourly rate of approximately $405 per hour. In addition, Plaintiffs' counsel has incurred over $1.5 million in costs pursuing the claims in these cases. That figure excludes the time spent pursuing individual arbitration cases, the *Arndt* collective action case, and the *Arnold* collective action case that proceeded after these Plaintiffs were dismissed from that case without prejudice. Below is a table of the lodestar and case expenses incurred for common benefit time and for each of the post-collective-action individual cases:

| Matter | No. of Plaintiffs | Total Hours | Total Fees | Total Expenses |
|---|---|---|---|---|
| Common Benefit (Nationwide) | All | 21,139.6 | $ 8,401,431.48 | $ 540,492.31 |
| Al Azawi (S.D. Tex.) | 27 | 1,335.7 | $ 443,829.50 | $ 57,355.35 |
| Aldrich (D. Colo.) | 2 | 1,238.9 | $ 627,391.81 | $ 16,303.67 |
| Alston (D. S.C.) | 14 | 1,572.2 | $ 647,799.50 | $ 45,636.05 |
| Amponsah (N.D. Ga.) | 10 | 2,254.8 | $ 869,008.25 | $ 59,650.63 |
| Anaya (N.D. Ill.) | 9 | 969.8 | $ 357,065.00 | $ 24,344.03 |
| Andersen (D. Ariz.) | 17 | 5,221.7 | $ 2,186,153.00 | $ 137,890.00 |
| Aulik (D. Conn.) | 3 | 404.9 | $ 156,724.50 | $ 8,953.82 |
| Banks (S.D. Miss.) | 14 | 927.7 | $ 336,058.50 | $ 31,937.62 |
| Battle (N.D. Ala.) | 18 | 1,651.7 | $ 649,016.05 | $ 63,321.34 |
| Belmont (M.D.N.C.) | 35 | 888.0 | $ 309,326.00 | $ 8,717.84 |
| Berger (D. Ore.) | 1 | 158.8 | $ 90,186.50 | $ 879.99 |
| Bryan (W.D. La.) | 14 | 285.7 | $ 91,832.50 | $ 2,116.57 |
| Buttita (N.D. Fla.) | 26 | 4,045.3 | $ 1,586,491.50 | $ 118,222.80 |
| Chesley (D.N.H.) | 6 | 582.1 | $ 229,689.50 | $ 17,283.92 |
| Comer (S.D. Ohio) | 21 | 2,314.5 | $ 864,135.50 | $ 47,567.94 |
| Cringan (W.D. Mo.) | 8 | 1,486.1 | $ 612,189.00 | $ 40,497.02 |
| Delgado (S.D. Ind.) | 13 | 1,168.5 | $ 440,096.75 | $ 35,199.46 |
| Demarco (D.N.J.) | 11 | 941.7 | $ 388,520.00 | $ 24,547.60 |
| Doucette (W.D. Tenn.) | 12 | 826.5 | $ 316,852.50 | $ 22,685.61 |
| Dowd (E.D. Mich.) | 18 | 1,369.4 | $ 497,953.49 | $ 43,775.39 |
| Grettler (D. Conn.) | 2 | 720.3 | $ 356,679.50 | $ 14,435.06 |
| Hall (D. Md.) | 4 | 373.8 | $ 196,577.50 | $ 16,561.79 |
| Hebron (N.D. Ill.) | 6 | 736.8 | $ 293,462.60 | $ 14,622.86 |
| Lewis (D. Md.) | 3 | 30.6 | $ 11,249.00 | $ 1,309.61 |
| Mabry (W.D. Ky.) | 5 | 465.8 | $ 174,344.50 | $ 15,104.14 |
| McCaffrey/Falcetta (E.D. Wis.) | 10 | 1,646.5 | $ 649,125.50 | $ 35,679.33 |
| Mullings/Whitlock (S.D.N.Y.) | 10 | 1,598.5 | $ 685,100.00 | $ 45,786.85 |
| Rapczynski (M.D. Pa.) | 3 | 687.5 | $ 334,708.00 | $ 20,348.87 |
| Renteria-Camacho (D. Kan.) | 1 | 345.1 | $ 185,823.00 | $ 4,794.75 |
| Roslov (E.D. Ark.) | 2 | 1,690.3 | $ 940,431.20 | $ 28,241.14 |
| Schmidt (D. Minn.) | 14 | 2,046.3 | $ 892,881.50 | $ 37,075.79 |
| Tapia (D.N.M.) | 3 | 743.5 | $ 326,440.00 | $ 11,979.30 |
| **TOTALS** | **342** | **61,868.4** | **$ 25,148,573.13** | **$ 1,593,318.45** |

16.     Dividing the total lodestar amount, as well as the total costs amount by the 342 plaintiffs in the related actions results in an average amount of $73,533 in lodestar and $4,658 in costs attributable to each plaintiff. The parties have agreed that Plaintiffs' counsel will receive $26,000 to account for both fees <u>and</u> costs per Plaintiff, in which reflects a substantial discount—well more than 50%—off the actual investment of time and out-of-pocket costs that Plaintiffs' counsel incurred in achieving this result.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this <u>25th</u> day of September, 2018 in Kansas City, Missouri.

/s/ George A. Hanson  
George A. Hanson